UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL B. KRATVILLE, | Case No. 17-CV-5209 (MJD/TNL) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| WARDEN OF FEDERAL PRISON CAMP – DULUTH, MINNESOTA, | |
| Respondent. | |

Michael B. Kratville, pro se.

Ana H. Voss, Ann M. Bildtsen, and Bahram Samie, United States Attorney's Office, for respondent.

\*\*\*

Petitioner Michael B. Kratville filed a lawsuit alleging that his constitutional rights had been violated by the Federal Bureau of Prisons ("BOP") in several respects. Many of those claims involved requests for monetary relief or injunctive relief in the form of amended BOP policies; those claims were civil in nature and are being adjudicated in another proceeding. *See Kratville v. United States Bureau of Prisons*, No. 17-CV-4453 (MJD/TNL) (D. Minn.). Among the claims raised in that lawsuit, though, was a claim that BOP officials had wrongfully denied Kratville placement at a residential re-entry center ("RRC") for the final 12 months of his prison term, instead setting a tentative RRC placement date of only 5-6 months removed from Kratville's release date. Such a claim may be raised only in habeas corpus proceedings, not in traditional civil litigation.

1

Accordingly, the RRC claim was severed from Kratville's first lawsuit, and the amended pleading that set forth the claim was interpreted as a petition for a writ of habeas corpus, which was docketed as the operative pleading in this matter.[1]

Respondent was then ordered to answer the habeas corpus claims raised by Kratville. *See* ECF No. 4. Respondent did so, and Kratville filed a reply to the answer. *See* ECF Nos. 8 & 18. This Court then ordered supplemental briefing on an issue raised during the course of briefing; both parties have submitted responses accordingly. *See* ECF Nos. 23 & 35. The matter has now been fully briefed and is before the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Based on that review, this Court concludes that Kratville's petition for a writ of habeas corpus should be denied.

Kratville pleaded guilty in the United States District Court for the District of Nebraska to one count of aiding and abetting wire fraud and was sentenced to a 48-month term of imprisonment in 2015. *See United States v. Kratville*, No. 8:13-CR-0146-2 (D. Neb. judgment June 22, 2015). At all times relevant to his petition, Kratville has been detained at the Federal Prison Camp near Duluth, Minnesota as a result of his conviction. According to the Federal Inmate Locator maintained by the BOP, Kratville is currently scheduled to be released from custody on February 21, 2019.

The Second Chance Act of 2007 provides (in part) that

---

[1] The addendum used as the operative pleading in this matter expands upon allegations found in the original pleading docketed in 17-CV-4453. This Court has considered and will discuss in this Recommendation the allegations and claims sounding in habeas corpus found in both pleadings submitted by Kratville.

> [t]he Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Although § 3624(c) contemplates that prisoners should generally be moved in the final months of their sentences from prisons to transitional facilities (such as RRCs), neither § 3624(c) nor any other statute *entitles* a prisoner to such a placement for any length of time. Instead, the BOP is given near-total discretion to "designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . ." 18 U.S.C. § 3621(b); *accord* 18 U.S.C. § 3624(c)(4) (noting that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."). That said, in designating the place of imprisonment, the BOP is instructed by statute to consider the following five factors:

> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence —
>
>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>>
>> (B) recommending a type of penal or correctional facility as appropriate; and

3

> (5) any pertinent policy statement issued by the Sentencing
> Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

Kratville initiated this action[2] about 18 months prior to his scheduled release from custody. Initially, Kratville's habeas corpus claim went as follows: The BOP is required to provide RRC placement "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). Section 3624(c)(1) allows for RRC placement "not to exceed 12 months." Kratville's specific circumstances, he argued, necessitated an RRC placement for the full 12-month duration permitted by § 3624(c)(1). Kratville placed specific emphasis on the fact that he was relatively aged ("almost 60 years old") and would miss out on comparatively greater remaining lifetime income than a younger inmate should RRC placement be delayed; that he was no longer eligible to work in his previous profession due to his federal felony and would therefore require comparatively greater time to transition from prison; and that both he and family members suffered from medical problems requiring treatment. *See* Compl. ¶¶ 22-46, Case No. 17-CV-4453 (MJD/TNL) (D. Minn.). Yet the BOP made an initial preliminary recommendation of RRC placement of 151-180 days removed from Kratville's custody release date, not the full 365 days of placement that Kratville requested. *See* Decl. of Kyja Winger ("Winger Decl.") ¶ 9 [ECF No. 10]. Kratville

---

[2] As discussed above, Kratville first raised the claims now pending in these proceedings in another lawsuit. That lawsuit was filed in September 2017; Kratville's habeas corpus claims were severed in November 2017, at which time this habeas corpus proceeding was opened.

4

contended in his original pleading that this preliminary placement date would violate the Second Chance Act's dictate to provide placement "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C).

Kratville then filed an amendment to his pleading that supplemented his original habeas corpus claim regarding RRC placement. In the addendum, Kratville argued that many prisoners who had previously been assigned RRC placement dates had seen those dates pushed back due to budgetary issues. *See* Petition at 1-2 [ECF No. 1]. Although Kratville was not among the prisoners who had seen their RRC placement dates altered — he had not yet been assigned a formal placement date — he feared that the same budgetary motivations would cause the RRC to assign a placement date violative of the Second Chance Act. Kratville contended that these budgetary concerns were not among the factors identified by § 3621(b) and therefore could not lawfully be considered by the BOP in making its RRC determinations, and he sought both a declaration and habeas corpus relief for not only himself, but for all litigants affected by the BOP's new policies.

Kratville's request for relief on behalf of a class is improper. Although a habeas corpus action may seek relief for an appropriate class in some circumstances, *see Williams v. Richardson*, 481 F.2d 358, 360-61 (8th Cir. 1973), pro se litigants may not represent the interests of other parties in federal litigation. *See, e.g.*, 28 U.S.C. § 1654; *Leventhal v. Rios*, No. 17-CV-5441 (PAM/KMM), 2018 WL 3130682, at *3 (D. Minn. May 16, 2018); *Perkins v. Holder*, 13-cv-2874 (PAM/FLN), 2014 WL 755378, at *5 n.8 (D. Minn. Feb. 26, 2014) ("The Court notes that *pro se* litigants can never represent the

5

rights, claims, and interests of other parties in a class action lawsuit (or otherwise)."). Kratville is not licensed to practice law before this Court; he therefore cannot represent other individuals during this litigation. This Court will therefore consider Kratville's claims only as pertinent to Kratville himself.

For two reasons, Kratville is not entitled to habeas corpus relief:

*First*, although it is neither a statutory nor jurisdictional requirement, exhaustion of available administrative remedies has long been required of federal prisoners before they may seek habeas corpus relief under 28 U.S.C. § 2241. *See, e.g.*, *United States v. Wilson*, 503 U.S. 329, 335 (1992); *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). This exhaustion requirement is generally enforced absent exceptional circumstances, such as futility of seeking administrative relief, *see Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004), or lack of time in which to prosecute an administrative action before the issues presented by the prisoner become moot, *see Simon v. LaRiva*, No. 16-CV-0146 (ADM/TNL), 2016 WL 1626819, at *4 (D. Minn. Mar. 10, 2016) (collecting cases).

Kratville has never sought formal administrative review of his RRC placement date, much less exhausted such administrative review. *See* Declaration of Shannon Boldt ¶ 19 [ECF No. 9]. The explanation offered by Kratville for having failed to so much as initiate administrative proceedings — that he would have been unable to procure timely relief through the administrative procedures — is not compelling. Kratville learned in August 2017 that his RRC placement date had been tentatively scheduled for 151-180 days prior to his February 2019 release date. *See* ECF No. 18 at 2. Even if granted the

6

full 365-day RRC placement permitted under § 3624(c)(1), Kratville would not have been eligible for RRC placement until February 21, 2018. With reasonable diligence, Kratville likely could have completed administrative review prior to the earliest date on which RRC placement could have been available to him. *See* 28 C.F.R. § 542.18 (setting mandatory response periods for administrative remedies). And even if Kratville could not have *completed* the administrative-remedy process, he certainly could have *started* that process, and almost assuredly would have received review at the institutional level, if not further up the chain of command. *Id*. Among the reasons administrative review is required in habeas corpus proceedings is to "promot[e] judicial efficiency by resolving potential issues and developing the factual record." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003). By foregoing the opportunity for even intermediate stages of administrative review, Kratville unnecessarily impeded those goals.

 Moreover, the circumstances of Kratville's case are far from atypical. In most instances, the BOP makes an initial determination of RRC placement about 17-19 months prior to the prisoner's custody-release date. *See* Winger Decl. ¶ 8. By statute, the prisoner becomes eligible for RRC placement 12 months prior to his release date. *See* 18 U.S.C. § 3624(c)(1). This leaves the ordinary prisoner 5-7 months before the maximum eligibility date in which to challenge any initial RRC placement determination — exactly how much time Kratville had available to seek relief from the BOP. Kratville's situation was therefore no different than that of the ordinary prisoner. To find that Kratville was not required to take affirmative steps towards exhausting administrative remedies in this

7

matter would thus be effectively to write out of law the exhaustion requirement in all habeas corpus proceedings where RRC placements are concerned.

*Second*, although Kratville's failure to exhaust administrative remedies — or even to initiate administrative remedies — is reason enough to recommend dismissal of his habeas corpus petition, that petition may also be denied on the merits. At bottom, Kratville fundamentally misreads the Second Chance Act by starting from the premise that an RRC placement of 365 days is normal, and that any deviation from that standard requires heightened justification by the BOP. This is incorrect. "Section 3624(c) does not guarantee that a prisoner will be placed in an RRC, nor does it entitle a prisoner to placement in an RRC for any minimum length of time." *Winters v. Marques*, No. 18-CV-1019 (WMW/HB), 2018 WL 3831348, at *1 (D. Minn. Aug. 13, 2018). There is no general expectation that prisoners will be given the maximum allotment of RRC placement permitted by law. Rather, the BOP must in all circumstances consider the factors set forth in § 3621(c) and make an individualized determination.

As raised in the original pleading, Kratville's claim amounts to little more than an argument that the BOP should have weighed the § 3621(b) factors differently and reached a different result. Kratville cites his age, education, former occupation, and health as factors that should have been given extra emphasis by the BOP. But the Court "does not have jurisdiction to review the ultimate discretionary decision by the BOP under §§ 3621(b) or 3264(c) to place [the petitioner] in an RRC or in home confinement placement." *Ambrose v. Jett*, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013). Put another way, this Court is without authority to review whether

8

the BOP should have weighed the various factors differently. Instead, this Court's review is limited to determining whether "the process by which the placement was made comported with federal law." *Berry v. Marques*, No. 18-CV-1394 (DWF/LIB), 2018 WL 3448599, at *3 (D. Minn. June 14, 2018). For instance, federal law requires that the BOP consider the five factors set forth in § 3621(b), and when the BOP fails to do so, "the BOP can be made to redo its decision in a manner consistent with federal law." But nothing in the record suggests that the BOP failed to evaluate the § 3621(b) factors in determining Kratville's placement date.

The other arguments offered by Kratville regarding how the BOP might have violated its statutory duties are likewise unconvincing. The fact that full 12-month RRC placements are unusual or even extraordinary, as Kratville alleges, does not mean that such placements are categorically denied by the BOP. Only the latter is impermissible. *See Elwood*, 386 F.3d at 845-47. Nor was the process by which Kratville's placement was made unlawful because the BOP may have considered budgetary concerns in determining that placement. Even assuming that such concerns are not encompassed by § 3621(b)(1) ("the resources of the facility contemplated"), § 3621(b) does not "preclude the consideration of factors beyond those set forth in the statute."[3] *Miller v. Whitehead*, 527 F.3d 752, 757-58 (8th Cir. 2008).

---

[3] Kratville's briefing is often difficult to disentangle as to whether he is arguing on his *own* behalf or on behalf of other prisoners. Kratville's own placement date does not seem to have been affected by recent BOP guidance documents generally shortening the duration of RRC placements for budgetary reasons.

Kratville last contends that the BOP should have conducted review under 42 U.S.C. § 17541(a)(1). That provision — now recodified at 34 U.S.C. § 60541(a)(1) — provides that the BOP must "provide incentives for prisoner participation in skills development programs," and that one incentive for participation in such skills-development programs is "the maximum allowable period in a community confinement facility." At least one court has found that this provision creates RRC placement procedures distinct from § 3624(c) that must be invoked by the BOP independently of any obligations under the Second Chance Act. *See Krueger v. Martinez*, 665 F. Supp. 2d 477 (M.D. Pa. 2009); *Hill v. Scism*, No. 3:cv-11-0080, 2011 WL 705354, at *2-3 (M.D. Pa. Feb. 18, 2011) (citing *Krueger*). But this is distinctly the minority position, and it has repeatedly been rejected by courts in this District. *See, e.g.*, *Bania v. Roal*, No. 11-cv-0925 (SRN/TNL), 2012 WL 1886485, at *4 (D. Minn. May 23, 2012). This Court follows the majority position. "A plain language interpretation of [§ 17541(a)(1)] supports the BOP's contention that it has discretion to decide whether the maximum allowable period at an RRC can serve as an incentive. Maximum time allotment in an RRC is only one of several incentives listed that may be awarded at the discretion of the BOP, as the statute allows for the Director of the BOP to offer any other incentive considered appropriate." *Id*.

Kratville did not exhaust, or attempt to exhaust, administrative remedies for his habeas claims, and those claims are in any event meritless. Accordingly, it is recommended that his petition be denied. Out of an abundance of caution, this Court will recommend that Kratville's motion to file certain evidence under seal [ECF No. 37] be

granted, and that the restrictions placed upon the documents Kratville wished to have sealed remain in place.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. Petitioner Michael B. Kratville's petition for a writ of habeas corpus [ECF No. 1] be DENIED.

2. Kratville's motion to seal [ECF No. 37] be GRANTED, with the docket restrictions already imposed remaining in place.


Dated: August  31 , 2018                             *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge


## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).